Good morning. Good morning, Your Honor. David Gauntlet for Appellant to Tzumi. I'd like to point out that there is implicit disparagement as set forth in the Rudder and Finn case from the New York Court of Appeals, which we believe is the most significant case in the history of the United States. And which we believe is analogous to the facts in the Second Amendment complaint as clarified by the settlement agreement recitals. And the reason that's the case is that there was a distinct performance criteria in that situation, which we believe is analogous to the allegations of paragraphs 10 and 20. Where for profit and higher market share, Tzumi exploits consumer preferences for power banks with higher megahertz. Further, Tzumi is incentivized to lead consumers to take away market share from competing products, thereby increasing its own sales and profits. The settlement agreement recitals note, Tzumi interprets- What is your best allegation with respect to this idea that there was a defamation claim? Yes. I would say 10 and 20 and then these recitals. Where on 10? Well, the fact that it's for profits and a higher market share, Tzumi exploits consumer preferences for power banks. In other words, they liked the bigger ads. Mr. Bronx, that doesn't indicate, under New York law and California law, it's very similar. You have to have a specific assertion of an unfavorable fact reflecting upon the rival product. And simply saying that they're doing this to get a higher market share doesn't say anything about competitors, right? What does that say about competitors? Well, it does inferentially, especially if you look at the settlement agreement recitals, which Tzumi interprets the allegations. The settlement agreement doesn't add anything. The settlement agreement is just your client's interpretation of the facts in the underlying complaint. So why should we- Not so, Your Honor. What it serves as is the determination of what was settled. So if there was any issue that the claimant had with the articulation, they were bound to state it. So that would override the lack- Assuming there's a lack of any factual basis for a disparagement claim in the underlying complaint, your client can just put in a settlement agreement, we think this is a disparagement claim, and that would control insurance coverage? They can put in what pertinent facts were not yet developed. The problem with the other approach that the district- So what's the fact? What's the pertinent fact that wasn't developed that was in the settlement agreement? What's the additional assertion of a fact in the settlement agreement? That the consumers placed a much higher value on bigger amps, and that products that were at a- that purported to provide equivalent amps were at higher prices, therefore the perception was that they were gouging. In every such case, I think this must be the logical conclusion with respect to your argument. In every such case where there's an allegation of a manipulated price or a higher price, that necessarily entails a defamation claim. No, you wouldn't have the clarification that was in the site recital agreement, which the settlement agreement was made available to the insurer, had no issue, didn't ask for questions- Mr. Bianco's question, which I think is the right one, is about if you were able, through a settlement agreement with a party that is not the insurance company, to transform the claim into something that would then be covered by the insurance policy, that would, it seems to me, be problematic. Well, you're assuming that there's no- Hold on, the problem is your client, not you, had an interpretation, post hoc, potentially, of what was being settled. And that seems to me to be rife for abuse with respect to these insurance policies. The answer to that is the carrier knew about the settlement. It had an opportunity to query the parties, ask information. It simply reaffirmed its denial, taking into account the recital's allegations. And the recital determines the scope of the release. Suppose, let me ask you a hypothetical. Suppose I own a car company, and I advertise that it gets 40 miles per gallon, and it gets 30. And I do that to get a higher market share of the car market. A competitor can bring a disparagement claim? I mean, here we actually have a consumer, but let's just assume a competitor, under your theory, could sue for a disparagement under New York law, correct? That has nothing to do with our hypothetical, because we have a 1770A8 claim, as articulated in Del Monte, and also clarified in Purdue Pharma. Can you answer my, is that a disparagement claim or not? It may not be. You may need additional facts. Why not? Because you would want to know that there was an impact on the perception of the product by the audience that would care. So in Penfield, as an example, they wanted an FDA-certified product that was a high market demand. And the court found that the statement that they had that quality was one that was a big deal, and that the attestation that they had FDA certification was sufficient. The same in the Pharma case that I mentioned. I just want to go back to Judge Lea's point. Is it your position that any time a company makes a false claim about the superiority of its product, whatever that may be, that it necessarily then disparages all the competitors? No. No. My claim is that given the statute, which gives a right of action to consumers, where the marketplace is allegedly mucked up by statements made that are inconsistent with the understanding of other competitors, there's a possible pathway to coverage under this statutory scheme, which is consistent with a Julie research standard that Elite really didn't address head-on in the way it should have. How is this case different from the Twin Cities case that your client brought, and Judge Abrams found no coverage and we affirmed in a summary order? How is it different from that? Well, that case involved placement of a product next to Lysol with the perception of the public that that meant that it was effective against surface contamination. And that was a very different fact scenario because we didn't have anything like the recitals in the settlement agreement here that clarified that there would be a consumer perception that the products were... So the only difference between that case and this case is the settlement agreement? The recitals therein clarified what was evident before. Remember, the solution of the district judge is to force every case to go to trial. She's very clear about that, that they need that very developed record to make it necessary to have enough information so we'll have ongoing litigation forever in order to get coverage benefits. You have to give an incentive in a settlement context. They had the opportunity to query the claimant as to whether the articulated recitals were consistent. They were offering a release in the same scope of the claims. The settlement didn't... it just expressed Sumi's view of the claims, right? It didn't say anything about the plaintiff's view. But the plaintiff did not contest it, and they were going to be barred subsequently if that issue that was articulated in the settlement agreement came up again. Apart from bringing a claim that they had no basis to bring, it would seem. Well, who knows? But the point is that was the understanding of the claim because it's a very early point in the case. And if you incentivize dropping any possible way of settling a case where you reflect the nature of what would have developed at a pretrial conference order through discovery or subsequently that the parties would have gotten to had they gone forward in order to facilitate settlement, everybody gets to go to trial. That's the district court solution. And that's not a very happy one for the legal system. I'm trying to understand actually exactly how you're using the settlement agreement. Because after the settlement, the insurance company denied the claim. So they saw your interpretation. They said, we disagree. And they denied the claim anyway. I understand. So they took it into account. They understood that if that had been pled, the result in their mind would not have been any different. And therefore, to say that it's not part of the record that I can rely on, where they acknowledge that it wouldn't have made any difference, is inappropriate. So you've reserved some time for rebuttal, I believe. I did. Two minutes. Thank you. We'll hear from your friend on the other side representing Burlington Insurance Company. Good morning. Good morning, Your Honor. James M. Adrian, Adrian Associates for Defendant Apelli, the Burlington Insurance Company. I have four quick points. First one is... I like the word quick. Yes, quick. Thank you, Your Honor. The underlying complaint does not explicitly... I actually like the word free. The underlying complaint does not explicitly allege disparagement. The code section relied on by Zumi is nowhere to be found in the underlying complaint. I think counsel cites this specific section ten times in his appellate filings. The district court correctly held that a passing citation to 11 states' consumer protection statutes, including California's, does not trigger a duty to defend. And that's 1778? Yes, Your Honor. And I didn't count them, but if I went through the 11 statutes and counted all the subcategories, we would be in the multiple thousands. The court mentioned that the subsection and the California code specifically was expansive and it had 28 distinct categories. So the court basically said you can't just cite a statute and say that the underlying complaint triggers the duty to defend. It's too far of a stretch. The second point I'd like to make is, and there was some dialogue earlier here, that the settlement agreement is not extrinsic evidence. Consideration of extrinsic evidence is limited to facts, not conclusions, characterizations, or interpretations of Zumi. And we put in our brief that, frankly, if an insured had the ability to draft a settlement agreement that states the underlying complaint says X, Y, and Z, from its perspective, and the court said the language in the settlement agreement says Zumi interprets. If that's allowable, then every single claim that's made to an insurance carrier is covered. What if, hypothetically, all the parties who are party to the settlement agreement agree and assert that these are the allegations that are being settled? Well, if you think about it, Your Honor, who knows if Zumi could self-fund, right? So they get together. It's self-serving for both, right? The Zumi puts in that this is a disparagement case and the plaintiff says, I want $100 million. Oh, yeah, sure, it is. And then how does that bind an insurance company? You wouldn't be able to write insurance. Would it be relevant extrinsic evidence? No, it's not facts. It's an interpretation. So both, all parties. All parties. Let's say we have a 10-party negotiated settlement agreement. They all agree that these are the claims that are being resolved. And the source of my question is the problem potentially that I have with the argument from your friend on the other side is that it's whereas Zumi interprets as opposed to the other parties.  Well, that's the language for cutting you off your arm. So my focus has been very limited on that. But you're telling me that even if all the parties agreed in a multi-party settlement agreement, that wouldn't change the dynamic, the legal analysis. Your Honor, you use the term post hoc, right? So what's supposed to happen when you do a duty to defend is you look at the underlying complaint. And extrinsic evidence is available to look at, but you can't create it. A settlement agreement is- It might be in the interest of all parties to create it because they want to add money to the funds. Exactly right. All the parties agree to a certain construction that could be inconsistent with the underlying complaint, right? Exactly right, Your Honor. What if the settlement agreement included stipulation to file an amended complaint that included a disparagement claim expressly? You'd have to wait for that amended complaint to be filed. And frankly, I think the district court stated that if the underlying case developed in such a way that extrinsic facts were actually found out and discovered, then at that point in time, there may be another question. But that didn't happen. What basically happened is exactly what I believe everyone knows what happened is there was a claim for coverage. There was no explicit or implicit allegation of disparagement. The claim was denied. And what Zuni attempted to do was create coverage through drafting a settlement agreement, which it sent to the underlying plaintiffs. Plaintiffs had no dog in that fight because they were going to get their settlement funded. So frankly, they signed and took their money. And the one dog in the fight that I think your colleague suggested was that it would preclude them from bringing any such claim. Well, they're not being disparaged. They're a consumer. The district court's decision was 29 pages long. And I forget how many pages address the fact that most of these cases are not consumer cases. You have to have a rival. And that's the elite brands case in New York. Basically, there has to be some kind of disparagement of someone. Zuni didn't disparage the consumers. The consumers don't have standing to make a disparagement case on behalf of the rivals of Zuni, who may be offering comparable products that are as fast, not as fast, or cheaper, or whatever else like that. You would turn the insurance coverage world and underwriting on its head if you allowed a disclaimed insured to draft up a settlement agreement that somehow creates coverage through what it's called extrinsic evidence. Again, the case laws that we've cited and the district courts have cited have stated that extrinsic evidence is factual. It's not post hoc. I don't like what the insurance company said. Let me try to create coverage. You would agree, you mentioned before, that you can have an implied disparagement claim. In other words, it doesn't have to be an explicit. Well, you can have implicit disparagement. And the court looked at the natural organics case. But it stated in that case, it frankly has to be reasonably inferred from the underlying facts. And in the natural organics case, what happened there is the defendant basically alleged that it had an exclusive distribution right to sell this product. And when you say you have an exclusive distribution right, that means nobody else can sell that right, can sell that product through that distribution channel. And consequently, that had a negative connotation or it was inferred had a negative connotation to its rivals. And that's where, you know, the language didn't specifically say my product's better than your product. It basically said I'm the only one that can sell this product. This is the area. And anybody else who's selling this product is unauthorized. Here, we don't even have my product is better than your product. We don't even have that allegation. There's no reference to any other product. I mean, this is really a leap of faith. And the courts, you know, there's two district courts cases and the Second Circuit have ruled on similar cases that say, this isn't, this isn't, this is not a disparagement defamation case. It's not covered under this type of insurance policy. Can I ask on the implied disparagement? I read that district court is looking only to the question of whether it would meet disparagement under New York law. Do you think that's the right analysis? I think that, I think it is correct. And I think that. Why wouldn't disparagement under California law, if it were different, materially different for purposes here, why wouldn't that be wrong? Well, I haven't really analyzed it too much, Your Honor, because California law doesn't apply to this case. Well, New York choice of law might point to California law, depending on the analysis and facts. Well, frankly, the California code that was, excuse me, what was cited was just general. It didn't, the underlying complaint didn't cite 1770A, excuse me, whatever the other subset. It just cited 1770A, right? Right. It just didn't cite the specific clause which is relied on by counsel. It's not there. And that's why that analysis doesn't need to be done. And my final point, I know I'm running out of time, is that in a number of these cases, because a claim wasn't set forth showing explicit or implicit disparagement, the court didn't have to get to the exclusions. The exclusions in the policy include, and the district court did reference this, there's a failure to conform to what you basically state, and there's an exclusion for false advertising. So isn't that what counsel's arguing, that they falsely advertised that their product could do 440 megahertz or whatever the metric is, but it could only do 30? There's multiple exclusions in these policies that exclude coverage, even if a disparagement claim somehow was made in the underlying complaint. What's the amount here? Excuse me? What is the amount? The settlement amount? No, no, the defense costs, do you know? I think, I don't, I'm not sure what the defense costs are. I know what the settlement costs are, and I believe that, you know, I think they were under a half a million dollars collectively. Thank you very much. Thank you. We'll hear some rebuttal. So the fact that all these consumer statutes didn't detail each specific provision doesn't mean they're still not before the court as part of the complaint. Well, looking at 1770A sub 11, advertising furniture without clearly indicating that it is unassembled, if that is the case, is that before? That would not be an obvious one that would be implicated by any of the facts. These have to be developed. But the point is that A8 was within the scope of possibility and that the recitals clarified. So your friend noted that the underlying complaint does not reference A8. Yeah. It has a very general reference to 1770. Is that correct? That's correct. But the specificity that you suggest is necessary would mean that the rules about very broad pleading would be dishonored. Because under the federal rules, you're entitled to very broadly plead and use discovery. So would it be enough for the underlying complaint to have merely referenced California law? No. Why not? Because there wouldn't be enough specificity, so it is a matter of degree. But if you have the statutory spectrum, that would appear adequate. If you look at Schaefer v. Calafia Farms, LLC, it says that statements, if disparaging, can be actionable, if untrue, by consumers under the unfair competition law, under the CLRA. And that is carried forward specifically to an 11-580 situation by Purdue Pharma, the oxycontin cases. But, Mr. Gondel, it's a combination of things that suggests what you're proposing here doesn't make any sense. You have an action by a consumer. You have a general reference to the California code with 28 causes of action in it. You have no reference to any competitors. You have no reference to any type of disparagement. And you're asking us to infer a disparagement claim in that situation, right? No different than the dollar store case did when it cited ACME from the Seventh Circuit that says, we make fabulous titanium stainless steel products that are better than stainless steel. We have this case from New York's First Department that we cited in the late summary order that says, mere general statements of comparison declaring that the defendant's goods are the best on the market are not enough to be a specific assertion of unfavorable facts for a disparagement claim. Isn't that- This is more than that. If you look at the facts that are asserted in the recital, the power products were of significantly higher value at a lower price. And that similar products, if its competitors made them, were implicitly, negatively, comparatively affected. That's what would have been in an amended complaint had that been the pathway they chose. It's no different. The parties agreed. And the main thing that CARA keeps failing to tell you is they didn't do anything about it. They didn't say, we want more information before we assess and reaffirm our denial. We want to know more. The difference between a route of an amended complaint and the settlement agreement is that Rule 11 might prohibit the other side in the action from- the plaintiffs from amending their complaint to include a disparagement claim. As opposed to just agreeing to whatever SUMI says it interprets the complaint. Great. If they thought it was a Rule 11 violation, they could have intervened before the settlement was consummated after seeing it in draft and taken- and asked the parties information. They could have even sought to do a declaratory relief action evaluating whether there was a duty to defend. They didn't. And so their failure to participate is a big deal in this case. And it has to be taken into account. As for the exclusions, they are addressed ad nauseum in the argument before the district court. And the district court chose not to reach them. What you have to bear in mind is if you have consumer injury caused by statements made, those- the liability for that activity is one that has nothing to do with false advertising. It has to do with the defamation or disparagement of another party caused by mucking up the marketplace. So when you say we are FDA certified and are, if you say, as in Del Monte Fresh, which is very germane and dealt with 1778, that we have extra sweet pineapple and nobody else on the planet can sell it but us. Thank you so much. That's for today. Thank you.